**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRYAN L. EDWARDS,<br><br>Petitioner,<br><br>v.<br><br>JEFF MACOMBER, Secretary, *et al*.,<br>Respondents. | Case No. 25-cv-2402-BAS-MSB<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND ISSUING A CERTIFICATE OF APPEALABILITY (ECF No. 1)** |

Presently before the Court is a Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 by Bryan L. Edwards, a state prisoner proceeding *pro se*. (ECF No. 1.) Respondents have filed an Answer and lodged the state court record. (ECF Nos. 8-9.) Petitioner was granted leave to file a Traverse (ECF No. 10) but has not done so.[1]

**I.   BACKGROUND**

On June 5, 2023, a jury found Petitioner guilty of voluntary manslaughter in the killing of his brother Derick Edwards with the personal use of a firearm, and he was sentenced to eleven years in state prison. (ECF No. 9-1 [Lodgment No. 1 at 298-99, 431].)

---

[1] Although this case was referred to United States Magistrate Judge Michael S. Berg pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument are necessary for the disposition of this matter. *See* S.D. Cal. Civ. L.R. 71.1(d).

25cv2402

Petitioner appealed, raising both claims presented here; namely, that there was insufficient evidence to support a jury instruction on mutual combat (claim one), and that a jury instruction on self-defense erroneously stated that his belief in the need for self-defense had to be the sole motive for shooting his brother (claim two). (ECF No. 9-19 [Lodgment No. 3].) The state appellate court denied both claims on the merits. (ECF No. 9-21 [Lodgment No. 5, *People v. Edwards*, D083087 (Cal.Ct.App. Feb. 28, 2025)].) A petition for review to the state supreme court was summarily denied. (ECF Nos. 9-22, 9-23 [Lodgment Nos. 6-7].)

On September 10, 2025, Petitioner filed the instant federal Petition presenting those two claims. (ECF No. 1.) Respondents answer that federal habeas relief is unavailable because both claims raise issues of state law only, and alternately that the state court adjudication of both claims is objectively reasonable. (ECF No. 8.)

## II.   TRIAL PROCEEDINGS

The following statement of facts is taken from the appellate court opinion on direct appeal. A federal habeas court defers to state court findings of fact and presumes they are correct. *Sumner v. Mata*, 449 U.S. 539, 545–47 (1981).

> Derick had a long history of drug abuse. He lived in a trailer in the backyard of the home where Bryan and their mother lived. Derick was not supposed to have drugs or "bad company" while living there.

> One day, after smoking methamphetamine, Derick and some friends gathered in the backyard to paint a van. Witnesses described Derick as "agitated" and yelling and "screaming at the top of his lungs." Bryan thought "something was off" with Derick.

> According to one witness, Bryan told Derick he was not allowed to have friends over and to take their activity elsewhere. Derick responded with "colorful language" and challenged Bryan, telling him to "knuckle up or kick rocks." Witnesses agreed Bryan walked away at this point, though accounts differ as to how long. Bryan testified he took his pregnant wife to the dentist and returned several hours later. Another witness testified Bryan returned within 15 minutes.

25cv2402

Bryan reentered the backyard and told everyone to leave. According to Bryan, Derick called him names and said it was "time to fight." As Bryan approached Derick, Bryan wrapped his wrists and hands to stabilize them so he could fight. A witness characterized the ensuing fistfight as "a mutual fight."

Before long, the brothers wielded more than fists. Derick escalated things first. As Bryan was getting the better of him, Derick grabbed a screwdriver and "lunged" at Bryan, stabbing him "right in the chest." In that moment, Bryan felt "extreme pressure" in his left lung and saw blood "squirting out" of him. According to Bryan's wife, Derick screamed at Bryan, "[y]ou got stuck."

In response, Bryan ran into the house, where he retrieved and loaded a semiautomatic rifle. While Bryan was inside, Derick grabbed the keys to a van parked in the backyard. Bryan returned to the backyard with the rifle less than one minute later. He fired three rounds. Bryan claimed Derick was approaching the house, so he fired warning shots in the dirt to ward him off. Two other witnesses, however, including Bryan's wife, testified Derick was already getting into the van to flee when Bryan fired. One witness saw the rifle pointed at Derick and the van.

Derick drove down the street, only to return a minute or two later. Bryan and his wife went to the front of the house to get into his truck and go to the hospital to treat Bryan's stab wound. Bryan still carried the rifle. To the witness in the backyard, it appeared as though Bryan was following Derick.

Bryan testified Derick was driving in circles in front of the house and "screaming . . . he's going to fucking kill me." Bryan claimed he shot into the dirt as Derick turned towards the driveway. According to Bryan, he begged Derick to leave, but Derick kept screaming about killing him. Bryan saw Derick sprint from the van towards him, so Bryan fired the rifle a final time, aiming for Derick's shoulder.

A bystander witness shared a different account. The witness saw Derick first exit the van, crouch by a tire, and call for help *before* Bryan came out of the house. The witness testified Bryan exited the house, pointed the rifle at Derick, and "immediately fired."

Bryan, "thinking the situation (wa)s over," drove to the hospital to treat his stab wound.

3

25cv2402

/ / /

Derick died from a gunshot wound to his chest after a bullet punctured his heart and lung.

(ECF No. 9-21 [Lodgment No. 5, *People v. Edwards*, D083087, slip op. at 3-5].)

## III.    DISCUSSION

### A.    Claim One

Petitioner alleges in claim one that a jury instruction stating that self-defense was not available if he engaged in mutual combat violated his right to due process under the California Constitution and the Fourteenth Amendment, as well as his Sixth Amendment right to a jury determination of all facts pertaining to guilt or innocence, because (1) any mutual combat ended when Derick drove the van away and Petitioner went back into his house, and (2) he had the right to defend his pregnant wife irrespective of the mutual combat requirements because she did not engage in mutual combat. (ECF No. 1 at 34-50.)

Claim one was presented to the state supreme court in a petition for review of the appellate court opinion. (ECF No. 9-22 at 8-19 [Lodgment No. 6].) It was denied in an order which stated: "The petition for review is denied." (ECF No. 9-23 at 1 [Lodgment No. 7].) The same claim was presented to the state appellate court on direct appeal (ECF No. 9-19 at 31-47 [Lodgment No. 3]), and denied in a reasoned opinion, (ECF No. 9-21 [Lodgment No. 5, *People v. Edwards*, D083087, slip op. at 5-8]). This Court applies a presumption, which no party has attempted to rebut, that the silent denial by the state supreme court adopted the reasoning of the appellate court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *see also Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002) (noting that federal habeas courts look to the last reasoned decision of a state court which adjudicated a federal claim on the merits). The appellate court stated:

Bryan challenges the factual basis for the jury instruction on mutual combat or initial aggressor. We conclude substantial evidence supported it.

Even if an instruction correctly states a principle of law, it is error to give an instruction that "has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.) As a result, "instructions not supported by substantial evidence should not be given." (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1050.) In this context, evidence is substantial if it is "sufficient to deserve jury consideration." (*People v. Marshall* (1997) 15 Cal.4th 1, 39.) Thus, "we must determine whether a reasonable trier of fact could have found beyond a reasonable doubt" that Bryan engaged in mutual combat or was the initial aggressor. (*People v. Cole* (2004) 33 Cal.4th 1158, 1206.)

At issue is an instruction that limits the right to self-defense. The court instructed the jury that a person who "engages in mutual combat" or "starts a fight" has a right to self-defense only if the defendant:

(1) actually and in good faith tried to stop fighting;
(2) communicated to the opponent "by word or by conduct" this intent to stop fighting; and
(3) gave the opponent a chance to stop fighting.

(See CALCRIM No. 3471.) If Bryan met those requirements, the court explained, he had a right to self-defense if his opponent continued to fight. Yet Bryan did not have to meet those requirements if he used only nondeadly force and his opponent "responded with such sudden and deadly force" that Bryan could not withdraw from the fight. Lastly, the court defined mutual combat as a fight that "began or continued by mutual consent or agreement" that could be "expressly stated or implied, and it must occur before the claim to self-defense arose."

Substantial evidence supported the instruction because the fight began as mutual combat. In response to his brother's challenge to "knuckle up or kick rocks," Bryan prepared to fight by wrapping his wrists. This action reflected Bryan's preexisting intention to engage in combat with Derick. (See *Ross*, 155 Cal.App.4th at p.1045.)

Bryan concedes there is sufficient evidence the brothers "engaged in mutual combat in the backyard." He argues it ended, however, when he went into the house and his brother drove away because they were no longer "exchanging blows" and the "battle was over." According to Bryan, that "lapse of time" created two separate events: (1) "the mutual combat in the backyard" and (2) "the shooting in the front of the house." We disagree.

25cv2402

Although Bryan characterizes his return to the house after shooting the rifle as withdrawing from the fight, on this record a reasonable jury could find otherwise. The evidence supports viewing the entire event as a single bout during which Bryan pursued Derick from the backyard to the front of the house. Bryan fired on Derick in the backyard—either warning shots, as he claims, or at Derick, as a witness testified. Not long after, Bryan moved to the front of the house—following Derick, per a witness—and continued shooting. A witness saw Bryan "immediately" fire on Derick upon reaching the front yard. On these facts, a reasonable jury could reject Bryan's characterization.

Bryan argues the confrontation in the front yard was not mutual because he was begging Derick to leave before firing the fatal shot. But "(i)t is well settled that the jury has wide latitude to believe or disbelieve witnesses, or even specific portions of their testimony." (*In re Lopez* (2023) 14 Cal.5th 562, 591.) Bryan acknowledges the jury was not required to believe this testimony. Nor did the jury have to believe his testimony he was done fighting and intended only to go to the hospital after the backyard shots. Instead, the jury could have believed a bystander's version of events, which saw Bryan shoot Derick while he was calling for help and cowering by a tire.

Thus, "the jury could reasonably find that both combatants actually consented or intended to fight before the claimed occasion for self-defense arose." (*Ross*, 155 Cal.App.4th at p. 1047, some italics omitted.) As a result, substantial evidence supported giving this instruction.

Separately, Bryan contends this instruction was too broad because it also referenced his defense of his wife. As Bryan provides no authority to support this argument, we deem the point forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.) He also forfeited it by not objecting on this specific ground at trial. (*People v. San Nicolas* (2004) 34 Cal.4th 614, 669.)

In sum, Bryan has failed to show the court erred in instructing the jury with CALCRIM No. 3471. We therefore need not address prejudice.

(ECF No. 9-21 [Lodgment No. 5, *People v. Edwards*, D083087, slip op. at 5-8].)

In order to obtain federal habeas relief with respect to a claim which was adjudicated on the merits in state court, such as this one, a federal habeas petitioner must first

25cv2402

demonstrate that the state court adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). If Petitioner can satisfy either provision, or they do not apply, a *de novo* review is required to determine whether a federal constitutional violation has been established. *Hardy v. Chappell*, 849 F.3d 803, 820 (9th Cir. 2016); *see also Fry v. Pliler*, 551 U.S. 112, 119 (2007) (holding that § 2254(d) "sets forth a precondition to the grant of habeas relief . . . not an entitlement to it").

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" of clearly established federal law occurs "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 407.

Clearly established federal law "refers to the holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(e)(1)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). In addition to demonstrating that the state court adjudication was objectively unreasonable

within the meaning of § 2254(d), Petitioner must also satisfy the *Brecht* federal harmless error standard to be entitled to federal habeas relief. *See Brown v. Davenport*, 596 U.S. 118, 127 (2022) ("[S]atisfying *Brecht* is only a necessary, not a sufficient, condition to relief. [28 U.S.C. § 2254(d)] too must be satisfied."), citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (holding that a state prisoner seeking federal habeas relief must show a trial error had "a substantial and injurious effect or influence in determining the jury's verdict"); *see also Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008) (finding jury instruction on invalid alternate legal theory to be trial error subject to *Brecht* harmless error analysis).

Petitioner claims that his state and federal constitutional rights were violated because the jury instruction eviscerated his right to self-defense since (1) any mutual combat ended when Derick drove the van away and Petitioner went back into the house, and (2) he had the right to defend his pregnant wife irrespective of the mutual combat requirements because she had not engaged in mutual combat. (ECF No. 1 at 34-44.) Respondents answer that the manner in which California defines or limits self-defense is an issue of state law only, which is not cognizable on federal habeas, and that a state court's pronouncement of state law, such as the state court relied on here to deny the claim, is binding on a federal court on habeas review. (ECF No. 8-1 at 13.) Respondents alternately contend that the state court adjudication of this claim is neither contrary nor an unreasonable application of clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1) because there is no United States Supreme Court authority supporting Petitioner's claim, and that the state court determination of the factual basis of the claim is objectively reasonable within the meaning of 28 U.S.C. § 2254(d)(2) because there is nothing unreasonable about finding that Petitioner followed his brother to the front yard to continue fighting when he could have simply left his brother alone. (*Id*. at 13-14.)

Respondent correctly observes that federal habeas corpus relief is not available for errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that 'federal habeas corpus does not lie for errors of state law.' . . . [And] that it is not the province of a federal habeas court to reexamine state-court determinations on

state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citation omitted)). However, a claim of instructional error in a state criminal trial may rise to the level of a cognizable federal habeas claim if the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," or where "there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Id*. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Boyde v. California*, 494 U.S. 370, 380 (1990)).

As quoted above, the state appellate court found that Petitioner acknowledged he engaged in mutual combat at the outset of the encounter with his brother and found that sufficient evidence existed in the record for a reasonable juror to find that he was still engaged in mutual combat when he shot Derick. Petitioner argues that he and his wife both testified that they begged Derick to leave before the fatal shot was fired, which was inconsistent with continued mutual combat, and argues there is no evidence contradicting their testimony or establishing mutual combat in front of the house. (ECF No. 1 at 46.) However, as the state court found, a witness, Petitioner's neighbor Daniel Alvarado, testified that Derick pulled up in his van in front of Petitioner's house, took one or two steps toward the house, crouched down by a tire, and cried for help. (ECF No. 9-6 at 66, 81-82 [Lodgment No. 2, vol. 4].) Alvarado testified that about two or three seconds later Petitioner exited his house, took a step out the door and immediately fired a shot, and that Derick jumped up and ran away as a second shot was fired. (*Id*. at 66.) Petitioner, however, testified that as he was leaving the front of his house Derick was in his van "doing donuts and screaming at me that he's going to fuckin kill me." (ECF No. 9-10 at 143 [Lodgment No. 2, vol. 8].) He testified that Derick turned into the driveway and Petitioner fired a warning shot into the dirt because he was afraid Derick was going to run down him or his wife. (*Id*. at 144.) Petitioner testified that he then begged Derick to leave, and as Derick drove away Petitioner put the firearm in his truck, but as he and his wife were getting into the truck Derick came toward them in the van at a high rate of speed. (*Id*. at 145-46.) Derick

25cv2402

then jumped out of the van screaming and acting erratically and Petitioner again begged him to leave and testified that he was afraid Derick had a weapon. (*Id*. at 147-50.) Petitioner testified that Derick was two or three steps away and sprinting toward Petitioner when Petitioner fired a shot; Derick then said, "you shot me" and took off running. (*Id*. at 150-51.)

Even if it was reasonable for the jury to believe Petitioner's testimony that he shot Derick out of fear that Derick was armed and attacking, the jury was nevertheless entitled to believe the neighbor, who testified that Petitioner *immediately* shot at Derick when they encountered each other at the front of the house as Derick was crying for help, and shot at Derick again as he was running away, supporting a finding that the mutual combat which began in the backyard had continued to the front of the house at the time of the shooting. Applying the "highly deferential" review of 28 U.S.C. § 2254(d), *see Clark v. Arnold*, 769 F.3d 711, 724 (9th Cir. 2014), it is clear that the state court reasonably found the instruction was supported by sufficient evidence that the mutual combat, which Petitioner acknowledged began in the backyard, was still in progress at the time of the killing. *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (holding that in order to satisfy § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous . . . [r]ather, that application must be objectively unreasonable" (citation modified)).

The state court adjudication of claim one is not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d)(1) because the state court did not apply a rule that contradicts the governing law set forth in the Supreme Court cases which provide that federal due process is violated where the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," or where "there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Estelle*, 502 U.S. at 72; *Cupp*, 414 U.S. at 147; *Boyde*, 494 U.S. at 380. Nor has Petitioner shown that the state court opinion arrived at a result different from those cases, unreasonably applied that precedent to this claim, or unreasonably extended or

25cv2402

refused to extend those legal principles to his case. *Williams*, 529 U.S. at 405–07; *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." (citation omitted)); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("The petitioner carries the burden of proof" in a federal habeas action.). Additionally, there is no basis in the record to find the state court adjudication involved an objectively unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2) because, as noted above, the state appellate court's factual finding regarding the trial testimony which it relied on to find sufficient evidence to support the instruction is supported by the record. *See Miller-El*, 537 U.S. at 340 (quoting 28 U.S.C. §§ 2254(d)(2), (e)(1)) ("[W]e presume the [state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'").

Even assuming, *arguendo*, that Petitioner can show the state court adjudication is objectively unreasonable within the meaning of § 2254(d), he must also satisfy the *Brecht* federal harmless error standard. *See Davenport*, 596 U.S. at 127. To do so, he must show that the instructional error had "a substantial and injurious effect or influence" on the outcome of the trial. *Brecht*, 507 U.S. at 637. As noted above, there was sufficient evidence at trial to allow the jury to find that Petitioner was still engaged in mutual combat when he shot his brother either as he was stationary and crying for help or as he was running away. Any error in instructing the jury that Petitioner could not claim self-defense if he was still engaged in mutual combat when he killed his brother did not have a substantial or injurious effect or influence on the verdict because sufficient evidence supported a finding that the mutual combat Petitioner engaged in with his brother in the backyard was ongoing when he killed him in the front yard, and it therefore did not hinder or mislead the jury on self-defense. *Id*. Petitioner provides no support for his claim that he had the right to defend his

pregnant wife irrespective of the mutual combat requirements because she did not engage in mutual combat. *See Pinholster*, 563 U.S. at 181 ("The petitioner carries the burden of proof."). The claim also fails because the state court found it to be waived for failure to object at trial. *See Zapata v. Vasquez*, 788 F.3d 1106, 1111–12 (9th Cir. 2015) (recognizing California's contemporaneous objection rule as an adequate and independent state ground that barred federal habeas review).

Habeas relief is denied as to claim one because the adjudication of the claim by the state court is objectively reasonable within the meaning of 28 U.S.C. § 2254(d), and because any error was harmless.

**B.    Claim Two**

In claim two Petitioner argues that his right to due process of law, and his right to an accurate determination of the facts by the jury, as guaranteed by state law and by the Sixth and Fourteenth Amendments, were violated because the jury instruction on self-defense, which provided that he "must have acted only because of" his belief in the need for self-defense, impaired the jury's ability to find he acted in self-defense by allowing them to find he did not act in self-defense if he *also* harbored animosity toward Derick when he shot him. (ECF No. 1 at 50-58.) He argues the error was aggravated by the prosecutor's misleading argument to the jury that self-defense was not available unless "the only thing that was going through [Petitioner's] mind [when he shot his brother that the jury needed to find] was self-defense." (*Id.*)

The Court will look through the silent denial of claim two by the state supreme to the state appellate court opinion. *Ylst*, 501 U.S. at 803–04. The appellate court stated:

> The court instructed the jury using CALCRIM No. 505. Relevant here, to justify killing Derick, the court stated Bryan "must have acted only because of th(e) belief" he or his wife was in imminent danger of death or great bodily injury.

> Bryan contends (1) his right to self-defense was not subject to the "'must have acted only because of that belief'" limitation; (2) instead, the standard should be a but-for causation test related to mixed motives for a

25cv2402

killing referenced in *People v. Nguyen* (2015) 61 Cal.4th 1015; and (3) even if the instruction was correct, the prosecutor "erroneously described the meaning" of it in closing arguments.

We review claims of instructional error de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) We address forfeiture before concluding the self-defense instruction correctly stated the applicable law.

The People say Bryan forfeited this claim by failing to object at trial. We consider the merits of the purported instructional error, however, because such a claim is not forfeited if it affected the defendant's substantial rights (Pen. Code, § 1259) and deciding that question "necessarily requires" us to examine the merits. (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249.) But Bryan forfeited his claim the prosecutor "erroneously described the meaning of the 'must have acted only because of that belief' language." To preserve a prosecutorial misconduct claim, the defendant "must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper argument" unless doing so would be futile. (*People v. Linton* (2013) 56 Cal.4th 1146, 1205 (cleaned up).) Bryan's trial counsel did not object. Although Bryan claims objecting would have been futile "because the prosecutor's argument superficially tracked the jury instruction," that position is at odds with the substance of his argument premised on the prosecutor diverging from the instruction. When the prosecutor said, "when Bryan Edwards pulled that trigger and shot his brother, the only thing that was going through his mind you have to find was self-defense," for example, Bryan could have objected and asked the court to admonish the jury that "(t)hose other thoughts . . . simply could not be the reason appellant shot Derick." Bryan does not explain how such an admonishment would have been futile. As a result, that claim of error is forfeited.

On the claim of instructional error, Bryan first argues the requirement to kill out of fear alone did not apply. We disagree. We also decline Bryan's invitation to deem the People's purported "failure to make any substantive argument" about the "sole reason" language in the instruction is a correct statement of law a concession to error.

As relevant here, under Penal Code section 197, one can justifiably kill another person when:

> (1) Resisting an attempt to do great bodily injury upon any person;

25cv2402

(2) Committed in defense of a person against someone who "manifestly intends or endeavors" to (a) commit a felony or (b) enter someone's home "in a violent, riotous, or tumultuous manner" to do violence; or

(3) Committed in the lawful defense of a person "when there is reasonable ground to apprehend a design to ... do some great bodily injury" and "imminent danger" of that injury; but if the person was engaged in mutual combat, then the person must have "really and in good faith" endeavored to end the struggle before it became a homicide. (§ 197(1)-(3).)

Bryan relies on Penal Code section 198—which specifies that "the party killing must have acted under the influence of such fears alone" in the scenarios described in subdivisions (2) and (3)—to argue his act of self-defense was not so constrained because it fell within subdivision (1). (§ 198.) Even if we were to put aside Bryan's concession that his conduct also "arguably fell within subdivisions (2) and (3)," the very cases Bryan cites for subdivision (1) undercut his position. (Citing *People v. Trevino* (1988) 200 Cal.App.3d 874 and *Nguyen*, 61 Cal.4th at p. 1015.) *Trevino* rejected this same argument and instead concluded "an instruction (that) states that the party killing must act under the influence of such fears alone( ) is a correct statement of the law." (*Trevino*, 200 Cal.App.3d at p. 879.) Our Supreme Court endorsed *Trevino* in *Nguyen*. (*Nguyen*, 61 Cal.4th at p. 1045.)

Bryan contends the "practical effect" of the instruction deprived him of the right to self-defense "if he *harbored* any degree of frustration or ill will towards Derick when he shot him." (Italics added.) Not so. Neither the law nor the instruction "require an absence of any feeling other than fear( ) before the homicide could be considered justifiable." (*Trevino*, 200 Cal.App.3d at p. 879.) "Instead, the law requires that the party killing act out of fear alone." (*Nguyen*, 61 Cal.4th at p. 1045 (cleaned up).) The causal factor must be fear rather than any other emotion.

In sum, Bryan gives us no reason to deviate from longstanding caselaw on this point. (See *Nguyen*, 61 Cal.4th at p. 1045 (collecting cases).)

Next, Bryan contends that, even if the acting out of fear alone limitation applies, the instruction is still defective because it does not include *Nguyen*'s but-for causation language. Again, we disagree.

This argument comes from dicta in which *Nguyen* noted the defendant

14

did not argue—at trial or on appeal—"the jury should have been instructed that acting based on mixed motives is permissible so long as reasonable fear was the but-for cause of (the) decision to kill." (*Nguyen*, 61 Cal.4th at p. 1046.) As a result, our Supreme Court had "no occasion to consider whether such a rule would be consistent with section 198 as interpreted in *Trevino*." (*Ibid*.) Like the *Nguyen* defendant, Bryan never asked the trial court for this but-for instruction. Although Bryan believes CALCRIM No. 505 "should include" such language, he does not provide any authority obligating a trial court to so modify the instruction absent a request from a party. Consequently, he has failed to establish error.

(ECF No. 9-21 [Lodgment No. 5, *People v. Edwards*, D083087, slip op. at 8-11].)

As with claim one, in order to satisfy 28 U.S.C. § 2254(d)(1), Petitioner must show the denial of this claim by the state court was contrary to or an objectively unreasonable application of the Supreme Court cases providing that federal constitutional error occurs only where the challenged jury instruction "by itself so infected the entire trial that the resulting conviction violates due process," or where "there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Estelle*, 502 U.S. at 72; *Cupp*, 414 U.S. at 147; *Boyde*, 494 U.S. at 380.

Petitioner argues that the instruction had the practical effect of telling the jury he did not have the right to defend himself or his wife if he harbored any degree of ill will or frustration toward Derick when he shot Derick. (ECF No. 1 at 52.) The state appellate court found the instruction did not preclude self-defense if Petitioner also harbored animosity toward his brother, because it was consistent with state law which requires fear be the causal factor in self-defense. That finding is objectively reasonable because the testimony of Mr. Alverado, Petitioner's neighbor—namely; that Petitioner shot at Derick immediately after Petitioner exited his house as Derick cried for help and then fired the second shot as he ran away (ECF No. 9-6 at 66 [Lodgment No. 2, vol. 4])—supports a finding that Petitioner was continuing the mutual combat rather than acting out of fear for his or his wife's safety. The instruction did not infect the entire trial with unfairness because the jury was presented with strong, independent, and objective evidence that Petitioner was not acting in self-defense or defense of his wife when he shot his brother; the jury was free

to reject Petitioner's testimony that Derick was armed and sprinting toward him when he fired. Petitioner has not shown a reasonable likelihood that the jury applied the instruction in a manner which interfered with his defense of self-defense. *Estelle*, 502 U.S. at 72; *Cupp*, 414 U.S. at 147; *Boyde*, 494 U.S. at 380.

The state court opinion is not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d)(1) because it did not arrive at a result different from *Estelle* and *Cupp*, nor unreasonably apply that precedent to Petitioner's claim or unreasonably extend or refuse to extend those legal principles to his case. *Williams*, 529 U.S. at 405–07; *Richter*, 562 U.S. at 102. Nor is there any basis in the record to find the state court adjudication involved an objectively unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2). *See Miller-El*, 537 U.S. at 340. In addition, Petitioner has not shown the alleged instructional error had "a substantial and injurious effect or influence" on the outcome of the trial. *Brecht*, 507 U.S. at 637. The jury was accurately instructed that in order to claim self-defense they must find that the reason Petitioner shot his brother was because he feared for his or his wife's safety. Whether Petitioner also harbored animosity toward or frustration with his brother at that moment was irrelevant to that determination, irrespective of the prosecutor's remark that state law required self-defense to be his only motivation. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (noting that a jury is presumed to follow its instructions).

The Court denies federal habeas relief as to claim two on the basis that the state court adjudication is objectively reasonable within the meaning of 28 U.S.C. § 2254(d) and any error is harmless.

## V.   Certificate of Appealability

The Court is required to grant or deny a Certificate of Appealability when entering a final order adjudicating a 28 U.S.C. § 2254 habeas petition. Rules Governing Section 2254 Cases (2019). "[T]he only question [in determining whether to grant a Certificate of Appealability] is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude

the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El*, 537 U.S. at 327). Under that standard, the Court finds that the issues involved in claims one and two are adequate to deserve encouragement to proceed further, and that a Certificate of Appealability is appropriate. *See Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (en banc) (recognizing that the standard for a certificate of appealability is less demanding than for habeas relief itself, and that any doubt whether a certificate should issue must be resolved in the petitioner's favor).

**VI.     Conclusion and Order**

The Petition for a Writ of Habeas Corpus is **DENIED**. (ECF No. 1). The Court **ISSUES** a Certificate of Appealability as to both claims in the Petition.

**IT IS SO ORDERED.**

**DATED: March 30, 2026**

_____
**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

17

25cv2402